# Durkin, Appellant, *v.* Lamond.

*Ejectment—Damages—Adverse possession—Evidence.*

1. In an action of ejectment for a strip of land two feet in width it appeared that in 1907, an old fence between the plaintiff's and defendant's lot was taken down and a new fence built. The plaintiff claimed that the new fence had been moved back on to her ground about two feet, and that she had been in exclusive and adverse possession of the strip for over thirty years. The defendant claimed the strip as within the line of his deed, and also alleged that the new fence was on the line of the old fence. In 1905, a stone wall was erected along the front of defendant's premises. The defendant offered in evidence a receipt of the builder of the stone wall built in 1905, and the receipt of a lumber company for the material for the fence built in 1907. She also offered in evidence tax receipts for tax paid on her house and lot from 1905 to 1908. *Held,* that the admission of all such evidence was erroneous, and that it was also error for the court to charge that the jury might consider as pertinent the existence of the stone wall at the front of the lot, the proximity of the old fence to the house, and the dimensions of defendant's lot according to her deed.

2. In such a case the only matter for the jury was to ascertain the fact of the plaintiff's occupancy of the strip, and the exclusive, continuous and hostile character of such occupancy for more than twenty-one years. The evidence admitted and referred to in the charge was not relevant to this question.

Argued March 4, 1914. Appeal, No. 21, March T., 1914, by plaintiff, from judgment of C. P. Lackawanna Co., Oct. T., 1911, No. 216, on verdict for defendant in case of Mary Durkin *v.* Margaret T. Lamond. Before RICE, P. J., HENDERSON, ORLADY, HEAD, PORTER, KEPHART and TREXLER, JJ. Reversed.

Ejectment for a strip of land in the city of Scranton. Before O'NEILL, J.

The facts are stated in the opinion of the Superior Court.

At the trial the following receipts offered by the defendant were admitted under objection and exception.

"Sold to Patrick Lamond, 431 Phelps street, 1907,

September 30, being a bill of lumber amounting to $21.05. Stamped paid October 4, 1907. Price & Howarth, per Wage." [5]

"Scranton, Pa., June 19, 1905. Received of Patrick Lamond in full for stone, cement and sand and stone and labor—in wall in front of house on Phelps Street, Scranton, and flagstone and coping. George Lowry." [7]

The court admitted under objection and exception the defendant's tax receipts for the years 1905–1908. [8, 9]

When F. O. Stone, a witness for defendant, was on the stand he was asked this question:

"Q. From what data did you start to make your survey of the Lamond lot? A. I had a copy or had Mrs. Lamond's deed from which I took the description, and then I simply went around and located her corners there were on the ground and located the house. Q. How do the dimensions of the lot as found inclosed or partially inclosed by fences as you found it correspond or compare with the description in the Lamond deed from John Caffery?"

Mr. Watson. We object to that as irrelevant and immaterial.

The Court. Objection overruled.

Exception noted for the plaintiff. [13]

Mr. Hoban: "Q. What is your answer. A. This deed of Mrs. Lamond's calls for 32.25 feet in front, which is practically what we found upon the ground; the depth was a little greater. Q. The depth of the lot? A. Yes, but the rear fence line overran about a tenth of a foot. Q. From your draft can you state how far this projected red line west of the Lamond house is from the house itself? A. In the rear of the lot, or the rear house rather, where the fence joins the house there was a distance from the body of the house to the fence of about 1.6 feet, which was practically the edge of the eaves of the building. Q. And about how far was the distance between the projected red line and the front part

of the side of the house?   A. The length of the house
was 41.7 feet."

The court charged in part as follow:
[The answer of the defendant is, that it is true a fence
was erected in 1907, but that as a matter of fact it was
erected upon the old post line and upon the exact line
as it had existed before that.   You have heard the testi-
mony of the defendant, also the testimony of Mr. Macker
who was engaged in the erection of part of the fence.
Some point is made, of course, that this fence so erected
was done at, the instance and direction of the plaintiff
herself, but that wouldn't necessarily debar her from
bringing an action if, as a matter of fact, a mistake
had been made by the carpenter in erecting the posts.
The defendant also says that she is in possession of
only approximately the exact number of feet that her
deed calls for, something like thirty-two feet in front,
that they erected a wall there in 1905, and that wall
is still there.   This would be a circumstance for you
to consider as to whether or not it did not indicate the
possession of the land claimed for, from the front to
the rear of the lot—not necessarily so, but it is a cir-
cumstance for you to consider.   Also the circumstance
that the land described in the writ here and for which
this action is brought, if the case were won by the
plaintiff, would run very close to the house of the de-
fendant that had admittedly been standing there for
thirty years; that is also a circumstance as to the con-
dition of affairs before the building of this fence in
1907.] [1]
[There is no dispute between these parties that
Mary Durkin owned a tract of land, on the one hand,
and that Margaret T. Lamond owned a tract of land,
on the other; it is this narrow strip between, that is in
dispute.   It is true that regardless of the lines or the
description in the deed, if a person has been in lawful
possession, adverse, notorious and open against the

whole world for twenty-one years, it is of no consequence what deeds, or of little consequence at least, may say with regard to this proposed tract of land. It is a question of fact as I view it at present, and it is for you to consider which of these stories is the more reasonable and proper under all the circumstances, taking all the testimony into consideration.] [2]

Verdict and judgment for defendant.  Plaintiff appealed.

*Errors assigned* among others were (1, 2) above instructions, quoting them (5, 7, 8, 9–13) rulings on evidence, quoting the bill of exceptions.

*W. W. Watson,* with him *John F. Murphy,* for appellant, cited: Velott v. Lewis, 102 Pa. 326.

*T. P. Hoban,* for appellee.

OPINION BY HENDERSON, J., April 20, 1914:

The plaintiff and defendant are owners of adjoining lots fronting on Phelps street in the city of Scranton. The subject of controversy is a strip of land a little less than two feet in width on the south side of the plaintiff's lot to which she asserts title by adverse possession. The defendant claims the land under a conveyance and denies that it has been in the possession of the plaintiff. The dispute arose in 1907 when a new fence was built from the northeast corner of the defendant's house to an alley at the rear of the lots to take the place of a fence which had for a long time been a division fence. The new fence the plaintiff claims was moved over onto her ground about two feet.  The space so inclosed in the defendant's lot by the new fence is alleged to have been in the exclusive, continuous, open, notorious and hostile occupancy of the plaintiff for about thirty years as a consequence of which title is claimed to have matured in her.  The defendant alleged on the contrary

that the new fence was on the line theretofore occupied by the old fence and that the land in dispute had been continuously in the possession of the defendant and those under whom she claimed. The issue was, therefore, a very narrow and plain one with reference to which there was a volume of conflicting evidence. During the progress of the trial evidence was introduced by the defendant to show that she built a stone wall in front of her lot along the street and the receipt of the builder of the wall for the price of his work was offered in evidence as was also the receipt of a lumber company which furnished material for the fence. The admission of these receipts is made the subject of the fifth and seventh assignments. The papers were admitted to show the time when the wall and fence were built, but they were incompetent for this purpose. They were the declarations merely of persons not parties to the action as to the time when payments of money were made and while they may not have had much weight in the determination of the case they had a tendency to divert the attention of the jury from the point in controversy. These assignments are sustained.

Evidence was offered as set forth in the eighth and ninth assignments to the defendant's evidence showing the assessments of tax on her house and lot for the years 1905, 1906, 1907, and 1908, and the payment of tax under the assessments. Evidence of this character is not effective to prove title but is admissible under some facts and circumstances to show the claim of the party assessed and paying tax to the land, but the assessments relied on by the defendant were made long after the plaintiff's title became valid if she have any title nor are they assessments against the land in controversy. They show a charge against the house and lot occupied by the defendant but they cast no light at all on the question whether the new fence was on the line of the old fence. There was no doubt that the defendant was in possession of a house and lot and that it was subject

to taxation and that she had paid the tax thereon but these assessments took no account of the small strip of land within what the plaintiff alleged was her inclosure. They could not help the jury to determine whether the plaintiff claimed and occupied up to the line she seeks to establish. We, therefore, sustain the eighth and ninth assignments.

The defendant was permitted to show the dimensions of her lot and that measuring to the line of the new fence she held only what was covered by her deed and that from the body of the house to the fence as now located was about one foot and six inches which was practically the edge of the eaves of the building. This evidence was not pertinent to the issue because the plaintiff was not claiming on a division of the land as originally plotted. If the plaintiff by adverse possession acquired title to a strip of the defendant's land the lot of the latter would necessarily be reduced to the extent of the amount adversely taken. Evidence, therefore, as to what she ought to have under her deed was a matter of no consequence. The case turned entirely on the allegation by the plaintiff that a certain fence had been in existence for such a length of time as a line fence that she acquired title by adverse possession. Evidence of the size of the defendant's lot threw no light on that subject but tended to raise another issue likely to mislead the jury. The thirteenth assignment is sustained.

In the charge the learned trial judge referring to the testimony that the defendant was in possession of only approximately the exact number of feet that her deed calls for and that she erected a wall extending across the whole front of her lot as claimed by her in 1905 said: "This would be a circumstance for you to consider as to whether or not it did not indicate the possession of the land complained for from the front to the rear of the lot—not necessarily so, but it is a circumstance for you to consider. Also the circumstance

that the land described in the writ here and for which this action is brought, if the case were won by the plaintiff, would run very close to the house of the defendant that had admittedly been standing there for thirty years; that is also a circumstance as to the condition of affairs before the building of this fence in 1907." This instruction gave to the jury a range of inquiry quite beyond the issue presented in the plaintiff's proofs; especially in view of that later part of the charge in which the court said: "It is a question of fact as I view it at present and it is for you to consider which of these stories is the most reasonable and proper under all the circumstances taking all the testimony into consideration." The jury would probably take the instruction quoted as authority to dispose of the case on what they deemed to be a reasonable basis without regard to the relevancy of the evidence. The stone retaining wall at the front of the lot, the proximity of the old fence to the house and the dimensions of the defendant's lot gave no information on the point about which the jury was to be informed and were not circumstances therefore which should influence the jury in ascertaining the fact of the plaintiff's occupancy and its exclusive, continuous and hostile character for more than twenty-one years. The first assignment is sustained.

Other exceptions are taken to the admission of evidence and the striking out of evidence, but they relate to features of the case not important and the grounds for exception will probably not exist at another trial. We need not discuss them, therefore.

The judgment is reversed with a venire facias de novo.